**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**CHARVELLE LAMONT ROBINSON,**

                **Petitioner,**

        v.                                           CASE NO. 22-3031-SAC

**HAZEL PETERSEN,**

                **Respondent.**

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner's response to the Court's March 8, 2022 memorandum and order to show cause (MOSC). (Doc. 6.) For the reasons explained below, the Court will dismiss the action as time-barred.

### Background

In 2005, a jury in Sedgwick County, Kansas, convicted Petitioner of two counts of aggravated robbery; the following spring, the district court sentenced him to a controlling sentence of 277 months in prison. (Doc. 1, p. 1); *State v. Robinson*, 2007 WL 4158148, *1 (Kan. Ct. App. 2007), *rev. denied* May 28, 2008. Petitioner pursued a direct appeal, but the Kansas Court of Appeals (KCOA) affirmed and the Kansas Supreme Court (KSC) denied the petition for review on May 8, 2008. *Id.*

In April 2015, Petitioner filed a motion in state district court seeking permission to file an untimely motion for post-conviction relief under K.S.A. 60-1507. *Robinson v. State*, 2017 WL 2494964, *1 (Kan. Ct. App. 2017). The district court denied the motion and, on appeal, the KCOA affirmed the denial in an opinion

filed June 9, 2017. *Id.* at *1, 6. Petitioner filed a second K.S.A. 60-1507 in state district court in March 2018, which the district court denied in December 2019. (Doc. 1, p. 4.) Petitioner appealed the denial; the KCOA summarily affirmed the denial and the KSC denied Petitioner's petition for review on January 13, 2022.

On February 13, 2022, Petitioner filed in this Court his petition under 28 U.S.C. § 2254 for writ of habeas corpus. (Doc. 1.) The Court conducted an initial screening of the petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and, on March 8, 2022, the Court issued the MOSC directing Petitioner to show cause why the matter should not be dismissed as time-barred. (Doc. 3.) Petitioner has now filed his response. (Doc. 6.)

## Timeliness Standards

This action is subject to the one-year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in 28 U.S.C. § 2244(d). Section 2244(d)(1) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

>made retroactively applicable to case on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The one-year limitation period generally runs from the date the judgment becomes "final," as provided by § 2244(d)(1)(A). *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). Under Supreme Court law, "direct review" concludes when the availability of direct appeal to the state courts and request for review to the Supreme Court have been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The Rules of the United States Supreme Court allow ninety days from the date of the conclusion of direct appeal to seek certiorari. Sup. Ct. R. 13(1). "[I]f a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after [her] direct appeal, the one-year limitation period begins to run when the time for filing certiorari petition expires." *United States v. Hurst*, 322 F.3d 1259 (10th Cir. 2003). The limitation period begins to run the day after a conviction becomes final. See *Harris v. Dinwiddie*, 642 F.3d 902-07 n.6 (10th Cir. 2011).

As explained in the MOSC, Petitioner's direct review concluded on May 28, 2008, when the KSC denied the petition for review of his direct appeal. Petitioner then had 90 days in which to file in the United States Supreme Court a petition for writ of certiorari, but there is no indication that he did so. Accordingly, on approximately August 27th, 2008, the day after the 90 days expired, the one-year period in which Petitioner could timely file a federal habeas petition began. It expired one year later, on approximately August

27th, 2009.[1] But Petitioner did not file the current federal habeas petition until February 13, 2022. In his response to the MOSC, Petitioner does not dispute these calculations. Rather, he asserts that he is entitled to equitable tolling of the one-year limitation period and that his claim of actual innocence is sufficient to justify applying the actual innocence exception to the limitation period.

### Equitable Tolling

As explained in the MOSC, the one-year limitation period is subject to equitable tolling "in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). It is available only "when an inmate diligently pursues his claims and demonstrates that he failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 127, 1220 (10th Cir. 2000). In the petition, it appeared that Petitioner might wish to argue that his mental condition qualified him for equitable tolling. Thus, the MOSC explained the following guidelines:

> "'Equitable tolling of a limitations period based on mental incapacity is warranted only in exceptional circumstances that may include an adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not capable of pursuing his own claim because of mental incapacity.'" *Alvarado v.* Smith, 713 Fed. Appx. 739, 742 (10th Cir. 2017) (quoting *Reupert v. Workman*, 45 Fed. Appx. 852, 854 (10th Cir. 2002)). In order to establish

---

[1] The federal statute that controls the deadline for state prisoners filing federal habeas petitions allows for pausing the one-year period during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). But in this case, Petitioner did not file such an application during the relevant one-year time period, so the statute's tolling provision does not apply.

> grounds for equitable tolling based on incapacity, a prisoner "needs to show that he had been institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application." *Alvarado*, 713 Fed. Appx. at 742.
>
> Petitioner should also be aware that when his incapacity ended, the one-year federal habeas limitation period resumed. Thus, the time in which Petitioner *was* mentally capable of pursuing his federal habeas claims counts toward the one-year federal habeas limitation period. The relevant time period is August 27, 2008 (when the limitation period began running) to February 13, 2022 (when Petitioner filed his petition). In order for this matter to be timely due to equitable tolling because of mental incapacity, Petitioner must demonstrate that during this time period, there were no more than 365 days total on which he was mentally capable of pursuing his federal habeas claims.
>
> Petitioner must make more than mere allegations of mental incompetence; he must specifically explain how his mental status left him incapable of pursuing his claims. *Id. See Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996) (declining to equitably toll a statute of limitations where the plaintiff claimed mental illness but "the evidence demonstrates that, in spite of his mental condition, [the plaintiff] 'was capable of pursuing his own claim'" during the relevant time period.).

(Doc. 3, p. 8-9.)

In his response to the MOSC, Petitioner alleges that he "has been under mental health care by prison mental health staff for Schizophrenia" since June 10, 2008. (Doc. 6, p. 1.) He "currently suffers from delusions, hallucinations, paranoia, and hears, talks with, and receive[s] commands from the voices." *Id.* at 2. His "reality is distorted" and he asserts that there have been no more than 365 days total between June 10, 2008 and February 13, 2022 in "which he was mentally capable of pursuing his habeas claims."[2] *Id.*

---

[2] In his response to the MOSC, Petitioner asks for counsel to be appointed to assist him. (Doc. 6, p. 2.) Petitioner has no constitutional right to counsel in

at 2, 10. In support, he has attached to his response a signed and notarized declaration. *Id.* at 8-11.

In the declaration, Petitioner explains that between June 10, 2008 and February 13, 2022, he was on "special needs protocol" because of his schizophrenia, which causes him to hear voices, hallucinate, experience distorted reality, and experience extreme delusions and paranoia. *Id.* at 9. At times, the voices commanded him to commit suicide. *Id.* Between June 16, 2008 and September 23, 2008, Petitioner was placed on antipsychotic medications, which caused constant drowsiness and did not regulate his schizophrenia. *Id.* Petitioner advises the Court that "[a]t some moments," the auditory hallucinations leave him unable to focus or cognitively function, rendering him unable "to rationally or factually understand the need to file legal claims in court." *Id.* at 9-10.

Petitioner asserts that he was "institutionalized in a mental-health living unit called the 'TRU program' to receive treatment for his schizophrenia, after which he was transferred on September 30, 2014 to Larned Correctional Mental Health Facility for further treatment." *Id.* at 10. His symptoms remain uncontrolled and was able to pursue state habeas relief "only with the assistance of 'jailhouse lawyers.'" *Id.*

---

a federal habeas corpus action. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Rather, the decision whether to appoint counsel rests in the Court's discretion. *Swazo v. Wy. Dept. of Corr. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir 1994). A court may appoint counsel if it "determines that the interest of justice so require." 18 U.S.C. § 3006A(a)(2)(B). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 451 F.3d 1218, 1223 (10th Cir. 2006)(quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). When deciding whether to appoint counsel, the Court must consider "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court has considered the relevant factors and concludes that at this point, the appointment of counsel is not warranted.

The "Behavioral Health Information" document Petitioner has attached to his response to the MOSC undermines Petitioner's claim that he was continuously incapable of pursuing his federal habeas claims between June 2008 and the time he filed his federal habeas petition. The document shows that special needs treatment was initiated on June 16, 2008 and that Petitioner "entered LCF-Treatment and Reintegration Unit (TRU) for MH treatment" on October 16, 2009. (Doc. 6-1, p. 2.) It also reflects, however, that Petitioner "completed reintegration from TRU and returned to [the] general population" on July 5, 2011. *Id.* The next entry on the document is dated May 9, 2012, when Petitioner "returned to LDF-TRU." *Id.* Thus, it appears that during this 10-month period, Petitioner was not institutionalized, even in the sense that he was placed in a special mental-health ward.

Moreover, the Tenth Circuit has held that the type of exceptional circumstances that justify equitable tolling based on mental incapacity "are not present where the party urging tolling has been able to pursue legal action during the period of his or her alleged incapacity." *Smith v. Saffle*, 28 Fed. Appx. 759, 760 (10th Cir. 2001) (unpublished order and judgment) (citing *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996)). Petitioner filed K.S.A. 60-1507 motions in the state district court in April 2015 and March 2018, and pursued appeals from the denial of both motions. Even if he did so with the assistance of "jailhouse lawyers," Petitioner nonetheless pursued legal claims during that time.

Accordingly, although the Court does not doubt the serious nature of Petitioner's schizophrenia, there appears to have been

more than 365 days between August 27, 2008 and February 13, 2022 in which Petitioner was mentally capable of pursuing his federal habeas claims. Therefore, any equitable tolling to which Petitioner may be entitled due to his mental health status does not make the current petition timely.

### Actual Innocence

Petitioner also asserts in his response to the MOSC that he is entitled to the actual innocence exception to the federal habeas statute of limitations. (Doc. 6, p. 2.) To qualify for the actual innocence exception, the prisoner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell* 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The prisoner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

During Petitioner's trial, he asked the state court to overrule his attorney's wishes and call Paul and Larry Barnett to testify. *See Robinson*, 2007 WL 4158148, at *1. Petitioner's counsel believed that testimony from the Barnetts, who had confessed to participating in the crimes, "would be very damaging to [Petitioner's] case." *Id.* The trial court denied Petitioner's request to call the Barnetts. *Id.*

In his federal habeas petition, Petitioner asserted that he is entitled to the actual innocence exception based on testimony from Larry Barnett and Ceara Oddtry. (Doc. 1, p. 26-27, 30, 36.) The Court reasoned in the MOSC:

> Petitioner asserts that if the jurors had heard Larry Barnett's testimony that he dropped Petitioner off before the robberies occurred, "[t]here is a reasonable probability that . . . the outcome of the trial would have been different." [(Doc. 1, p. 27, 30.)] In an attached sworn affidavit, Petitioner states that the Barnetts dropped him off at the home of Ceara Oddtry at between 9 and 9:30 p.m. on the night of the robberies, where he stayed until Paul Barnett picked him up between 10 and 10:45 p.m., when Paul told Petitioner "that he and Larry had just committed some robberies." *Id.* at 36. Petitioner concedes that he testified at trial on his own behalf but says he "made up a story." *Id.*
>
> The actual innocence inquiry is "a probabilistic determination that, in light of all the evidence—'old and new; admissible and inadmissible,'—'more likely than not any reasonable juror would have reasonable doubt.'" *Fontenot v. Crow*, 4 F.4th 982, 1035 (10th Cir. 2021) (citations omitted). When considered through this holistic lens, the Court is not persuaded that it is "more likely than not [that] any reasonable juror would have reasonable doubt" about Petitioner's guilt after hearing the additional testimony. *See id.* at 1030. Simply put, even if Larry Barnett testified that he dropped off Petitioner before the robberies took place and Ms. Oddtry testified that Petitioner was at her home during the robberies, the credibility and weight of that evidence would be severely undermined by the taped police interview in which Larry Barnett "specifically identified Robinson as a participant" and Paul Barnett's "indicat[ion] that he would testify that Robinson participated in the gas station robbery." *Robinson*, 2007 WL 41587148, at *1.[3] Thus, this is not a situation where "'"evidence of innocence [is] so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."'" *See Fontenot*, 4 F.4th at 1031. Thus, on the information now before the Court, the actual innocence gateway remains closed.

(Doc. 3, p. 6-7.)

---

[3] The description of the recorded police interview and of Paul Barnett's comments come from the KCOA opinion in Petitioner's direct appeal. The Tenth Circuit has instructed that "'when a state court has made a factual determination bearing on the resolution of a *Schlup* issue, the petitioner bears the burden of rebutting this presumption by "clear and convincing evidence."'" *Fontenot v. Crow*, 4 F.4th 982, 1034-35 (10th Cir. 2021) (citations omitted).

In his response to the MOSC, Petitioner disputes the Court's conclusion that his actual innocence argument is unpersuasive. (Doc. 6, p. 3.) Petitioner cites legal authority concerning how federal courts sitting in habeas consider the merits of claims not adjudicated by state courts, including claims that are procedurally defaulted in the state courts, and he asserts that he is entitled to an evidentiary hearing. *Id.* at 3-7. He also contends that the Kansas state courts erred during the 60-1507 proceedings by "discount[ing his] evidence of actual innocence," that his trial counsel "stymied his actual innocence claim," and that "[t]he prosecution knowingly withheld [the Barnetts'] exculpatory testimony from the jury." *Id.* at 5-6.

The limited question now before the Court is whether Petitioner has shown entitlement to the actual innocence exception to the federal habeas statute of limitations. If he has not, this matter must be dismissed as untimely filed. The Court is not examining the merits of Petitioner's underlying constitutional claims, reviewing whether the Kansas state courts erred, or determining whether an evidentiary hearing is required in this habeas matter. After carefully reviewing the response to the MOSC, the Court finds no additional information therein that opens the actual innocence gateway to allow this untimely habeas matter to proceed.

## Conclusion

For the reasons set forth above, the petition in this matter was not filed within the one-year statute of limitations. Petitioner has not shown that he is entitled to equitable tolling of the statute of limitations or to the actual innocence exception to the statute of limitations. Accordingly, the matter must be dismissed

as time-barred.

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability (COA) upon entering a final adverse order. A COA may issue only if the petitioner made a substantial showing of the denial of a constitutional rights. 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485.

The Court concludes that its procedural ruling in this matter is not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that this matter is **dismissed** as time-barred. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED: This 25th day of April, 2022, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge